IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CITY OF CAMBRIDGE RETIREMENT SYSTEM, et al. | : : : | CIVIL ACTION |
| v. | : : | |
| ALTISOURCE ASSET MANAGEMENT CORPORATION, et al. | : : | NO. 15-04 |

MEMORANDUM

Bartle, J.                                                      July 5, 2017

This is a putative securities class action filed on January 16, 2015 on behalf of the shareholders of Altisource Asset Management Corporation ("AAMC") against AAMC and its former Chairman of the Board of Directors, William C. Erbey, its former Chief Financial Officer, Kenneth D. Najour, its former Chief Executive Officer, Ashish Pandey, and its Chief Financial Officer, Robin N. Lowe.[1]

On June 19, 2015 plaintiffs filed their first amended complaint, which they titled "consolidated complaint for violation of federal securities laws." On April 6, 2017 the

---

1. Lead Plaintiff is Denver Employee Retirement Plan. It is a government-defined benefit plan that provides retirement benefits to members of the City and County of Denver, Colorado, the Denver Health and Hospital Authority, and the Denver Employees Retirement Plan. The class is defined in the complaint as all of those who purchased the publicly-traded stock of AAMC between April 19, 2013 and January 12, 2015, excluding defendants, other officers and directors of AAMC at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

court dismissed the first amended complaint for failure to state a claim upon which relief can be granted under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, et seq., ("PSLRA"). See Memoranda and Order, April 6, 2017 (Doc. ## 74 and 75). Now before the court is the motion of lead plaintiff Denver Employee Retirement Plan "for leave to file first amended consolidated complaint." Despite the title, this is plaintiffs' third bite at the apple.

The first amended complaint, that is plaintiffs' second bite at the apple, alleged violations of §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §78a, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs asserted that defendants defrauded investors by artificially inflating the value of the stock of AAMC, a publicly-traded asset management company incorporated in the United States Virgin Islands. Plaintiffs averred that defendants employed fraudulent schemes, made false statements of material fact and/or omitted material facts from public disclosures, and engaged in a course of business that operated as a fraud upon the shareholders regarding AAMC's financial outlook. Pursuant to § 20(a) of the Securities and Exchange Act, 15 U.S.C. §78a, plaintiffs sought to hold the individual defendants liable as controlling persons of AAMC who had the

power and authority to cause AAMC to engage in the alleged wrongful conduct.

According to plaintiffs, defendant Erbey served as the Chairman of the Board of Directors of a total of five publicly-traded companies related to the mortgage servicing business, including AAMC. These companies, known as the "Ocwen-Related Companies" included AAMC, Ocwen Financial Corporation ("Ocwen"), and Altisource Residential Corporation ("RESI").[2] Ocwen is a large mortgage servicing company. AAMC provided asset management and corporate governance advising services to RESI, a real estate investment fund focused on acquiring, owning, and managing a large portfolio of single-family rental properties. Ocwen serviced RESI's portfolio of non-foreclosing homes during certain times when RESI could not immediately seize an underlying property after foreclosing on it.

Plaintiffs alleged, among other things, that if Ocwen's mortgage servicing capabilities were curtailed, there may have been a materially adverse effect on RESI. Plaintiffs asserted that AAMC's future success was directly tied to the success of RESI. Thus, according to plaintiffs, any materially adverse effect on RESI had a materially adverse effect on AAMC. Plaintiffs averred that AAMC's failure to disclose certain "true

---

2. The other two companies, Altisource Portfolio Solutions and Home Loan Servicing Solutions, are not relevant to the present discussion.

facts" about Ocwen resulted in AAMC disclosing false and misleading information about its financial health in violation of the PSLRA.

Furthermore, plaintiffs pleaded in the first amended complaint that transactions that took place between the Ocwen-Related Companies were the result of an unfair process from which defendant Erbey failed to recuse himself, despite his public admission of conflicted interest. Plaintiffs averred that the unfair process led to transactions that were either materially unfair to certain Ocwen-Related Companies and/or resulted in Ocwen being incentivized to violate state and federal laws that protected consumers in mortgage servicing transactions. Plaintiffs alleged that AAMC's failure to disclose the information about Erbey's failure to recuse himself was false and misleading in violation of the PSLRA.

In dismissing the first amended complaint, we determined that the PSLRA requires plaintiffs to plead both the statements of the defendants that were false or misleading because of what was said or omitted and how the statements were false or misleading. 15 U.S.C. § 78u-4(b); Tellabs, Inc., v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321 (2007). We agreed that plaintiffs had provided "true facts" about Ocwen. However, we concluded that plaintiffs did not plead the second half of the pleading requirement. Plaintiffs failed to plead a

connection between Ocwen and AAMC and thus failed to aver how any statements made by AAMC were false or misleading.

Additionally, we determined that plaintiffs failed to plead loss causation under 15 U.S.C. § 78u-4(b) with respect to allegations regarding related-party transaction approval process and conflicts of interest between the Ocwen-Related Companies.[3]

I.

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. It states, in relevant part: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held that although "grant or denial of an opportunity to amend is within the discretion of the District Court . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of that discretion." Foman v. Davis, 371 U.S. 178, 182 (1962);

---

3. We note, as a preliminary matter, the frustration caused by the sloppy organization of not only the first amended complaint filed on June 19, 2015, but also of the proposed second amended complaint. Both of these poorly organized, careless submissions to the court mis-numbered paragraphs, fail to include paragraph numbers altogether, repeat the same paragraph numbers multiple times, fail to reference consistently the same corporations by the same corresponding acronyms, and make crucial misstatements of sums of money. The extremely poor organization by plaintiffs of these complaints alleging complex securities fraud violations makes it unnecessarily difficult to ensure the "just, speedy, and inexpensive determination" of this action pursuant to Rule 1 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 1.

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The purpose of Rule 15 is to allow a plaintiff "an opportunity to test his claims on the merits[.]" Foman, 371 U.S. at 182.

Nonetheless, the Supreme Court has explained that undue delay, bad faith, dilatory motive, prejudice, and futility are among the reasons why a court in its discretion may deny an amendment to a complaint. Foman, 371 U.S. at 178. "This is the case whether the complaint is dismissed for failure to state a claim or failure to plead a claim with particularity." In re Burlington, 114 F.3d at 1434. Our Court of Appeals "ha[s] interpreted these factors to mean that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993) (quoting Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). In order to show prejudice, the non-moving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (citations omitted).

Our Court of Appeals has explained that "[i]n the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or

unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." Lorenz, 1 F.3d at 1414 (citing Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981)). If the proposed amendment to the complaint does not remedy the pleading deficiencies, the amendment is futile and thus should be denied. In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 280 (3d Cir. 2004).

II.

Defendants argue, among other grounds, that the filing of the proposed amended complaint would be futile. After detailed review, we conclude that plaintiff has not remedied multiple deficiencies in the first amended complaint that were identified by this court in the April 6, 2017 memoranda.

The court, as noted above, previously determined that plaintiffs' first amended complaint failed to allege a connection between AAMC and Ocwen that is necessary to explain how the "true facts" disclosed by various non-parties about Ocwen show that AAMC's public disclosures were false and misleading. The proposed second amended complaint, that is plaintiffs' third bite at the apple, is a futile and misplaced attempt by lead plaintiff to plead false or misleading statements by AAMC. Without alleging a connection between AAMC and Ocwen, lead plaintiff fails to show how "true facts" about

-7-

Ocwen that were omitted from AAMC's disclosures caused AAMC's disclosures to be false and misleading.

In its motion for leave to file a second amended complaint (misleadingly called its first amended complaint), lead plaintiff implores the court to infer the necessary connection between AAMC and Ocwen. Plaintiff relies on decisions of <u>Martin v. Altisource Residential Corp.</u>, 2017 WL 1068206 (D.V.I. March 16, 2017), and <u>In re Ocwen Fin. Corp. Sec. Litig.</u>, 2015 WL 12780961 (S.D. Fla. Dec. 22, 2015). In the proposed seconded amended complaint lead plaintiff cites the same or similar "true facts" about Ocwen that were cited in the complaints in <u>Martin</u> and <u>In re Ocwen</u>. The district courts in each of those cases determined that plaintiffs alleged actionable false or misleading statements by defendants. In its brief, lead plaintiff fails to disclose that the defendants in those cases were only RESI and Ocwen, respectively. Notably AAMC was not a defendant in either. It is not reasonable to infer, based on the allegations in the proposed amended complaint or in <u>Martin</u> and in <u>In re Ocwen</u>, that the allegations set forth by lead plaintiff here establish a connection between Ocwen and AAMC.

We also determined in the April 6, 2017 memoranda that plaintiffs had failed to plead loss causation as required under the PSLRA. In order to state a claim for securities fraud, the

PSLRA requires plaintiffs to plead loss causation in addition to falsity and scienter. 15 U.S.C. § 78u-4(b). This requires plaintiffs to plead a causal connection between the material misrepresentation and the loss. 15 U.S.C. § 78u-4(b); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005). "The loss causation inquiry asks whether the misrepresentation or omission proximately caused the economic loss." McCabe v. Ernst & Young, LLP, 494 F.3d 418, 426 (3d Cir. 2007); EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 883 (3d Cir. 2000).

The proposed amended complaint likewise fails to plead loss causation. It provides various dates that AAMC's stock price declined following public statements by the New York State Department of Financial Services that discussed Ocwen and its related-party transaction policy in a negative light. These bald dates, statements, and stock prices, without more, fail to plead loss causation. As our Court of Appeals has stated, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." McCabe, 494 F.3d at 425; Dura, 544 U.S. at 346. Lead plaintiff has failed to plead how "the fraudulent misrepresentation or omission <u>actually caused</u> the economic loss suffered." McCabe, 494 F.3d at 425 (emphasis added).

III.

Plaintiffs, who are represented by sophisticated counsel, have already amended their complaint once on June 15, 2015. Under these circumstances, wherein plaintiffs have filed the first amended complaint which was dismissed, and now the proposed second amended complaint which is futile, we advise the parties that we will not allow plaintiffs a fourth bite at the apple. Enough is enough.

Accordingly, we will deny with prejudice the motion of lead plaintiff for leave to file "a first amended consolidated complaint," that is, a futile third bite at the apple.

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| CITY OF CAMBRIDGE RETIREMENT SYSTEM, et al. | : | CIVIL ACTION |
| v. | : | |
| ALTISOURCE ASSET MANAGEMENT CORPORATION, et al. | : | NO. 15-04 |

ORDER

AND NOW, this 5th day of July, 2017, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion of lead plaintiff Denver Employee Retirement Plan for leave to file "a first amended consolidated complaint" (Doc. # 77) is DENIED with prejudice.

BY THE COURT:

_____ J.
HARVEY BARTLE III
SITTING BY DESIGNATION